**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JUNAID PATNI,

        Plaintiff,

v.

CREDIT CONTROL, LLC, and
RESURGENT CAPITAL SERVICES, L.P.,

        Defendants

Case No. 1:21-cv-02515

**<u>COMPLAINT</u>**

NOW COMES Plaintiff JUNAID PATNI, by and through James C. Vlahakis, and submits the following claims against Defendant:

**I.   Jurisdiction, Parties and Venue**

1.    This action arises under and is brought pursuant to Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.* and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.*

2.    Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

3.    Subject matter jurisdiction is conferred upon this Court by Section 1692k(d) of the FDCPA as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

4.    Plaintiff JUNAID PATNI (at times "Plaintiff") is a citizen of the State of Illinois and resides within this Judicial District.

5.    Defendant CREDIT CONTROL, LLC ("CCL") is a limited liability company that maintains its principal place of business at 5757 Phantom Drive, Hazelwood, Missouri 63042.

6.      RESURGENT CAPITAL SERVICES, L.P. ("RCS") is a foreign limited partnership with its principal place of business located in Greenville, South Carolina.

7.      Venue is proper pursuant to 28 U.S.C. §1391 as both Defendants conduct substantial debt collection business in this judicial district and the subject collection letters were sent to Plaintiff's residential address which is located within this judicial district.

## II. Summary of the FDCPA

8.      Section 1692 of the FDCPA contains "Congressional findings" and a "declaration of purpose" and states as follows:

**(a) Abusive practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

**(d) Interstate commerce**

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

**(e) Purposes**

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*See*, 15 U.S.C. § 1692.

9. One purpose of the FDCPA was to address "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

10. In enacting the FDCPA, Congress determined that "[a]busive debt collection practices contribute to" societal harms, including increasing "the number of personal bankruptcies," "marital instability," "the loss of jobs," and "invasions of individual privacy." 15 U.S.C. § 1692(a).

11. Congress determined that "[e]xisting laws … are inadequate to protect consumers" and that "[m]eans other misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692(b)-(c).

12. The FDCPA provides that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c).

13. Congress enacted the FDCPA to protect ethical debt collectors from being competitively disadvantaged by debt collectors who do not abide by the prohibitions set forth by the FDCPA. 15 U.S.C. § 1692(e).

**A. Section 1692c(b) of the FDCPA**

14. Section 1692c(b) of the FDCPA, titled "Communication with third parties," states as follows:

> *Except as provided in section 1692b of this title*, <u>without the prior consent of the consumer *given directly to the debt collector*</u>, … *a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer*, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b) (emphasis supplied).

15. Section 1692b provides as follows:

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4 ) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the Subject Debts and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b.

16.     Section 1692b relates to the manner in which a debt collector may lawfully communicate "with any person *other than the consumer* for the purpose of acquiring location information." 15 U.S.C. § 1692b (emphasis supplied).

17.     As discussed below, the complained of conduct does not relate to Defendants attempting to obtain "location information" related to Plaintiff.

**B. The FDCPA is to Protect the Privacy Rights of Consumers**

18.     The FDCPA's statutory findings explicitly identify "invasions of individual privacy" as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

19.      "[I]nvasions of personal privacy have been regarded as a valid basis for tort suits in American courts." *Hunstein v. Preferred Collection & Mgmt. Servs.*, __ F.3d ___, 2021 U.S. App. LEXIS 11648, *8 (11th Cir. April 21, 2021). (citing *Pavesich v. New*

4

*England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918).

20.     "[T]he existence of a right of privacy is now recognized in the great majority of the American jurisdictions that have considered the question." *Id.* (quoting Restatement (Second) of Torts § 652A cmt. a. (Am. Law Inst. 1977)).

21.     "[T]he term 'invasion of privacy' comprises an identifiable family of common-law torts—including, most relevantly here, 'public disclosure of private facts.' Invasion of Privacy, Black's Law Dictionary 952 (10th ed. 2014)." *Id.* at *8-*9.

22.     "It is hornbook law that '[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.' Restatement (Second) of Torts § 652D (1977)." *Id.* at *9.

23.     "[T]he Supreme Court itself has recognized 'the individual interest in avoiding disclosure of personal matters' and has recognized that 'both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.'" *Id.* (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989) (citation and quotation marks omitted)).

24.     Illinois law recognizes that forms of invasions of personal privacy, referred to as the tort of "intrusion upon seclusion," have been regarded as a valid basis for tort suits in the United States. *See, e.g., Duncan v. Peterson*, 835 N.E.2d 411, 422 (Ill. App. Ct. 2005)

25.     The tort of "invasion of privacy" comprises an identifiable family of common-law torts—including, most relevantly here, "public disclosure of private facts."

INVASION OF PRIVACY, BLACK'S LAW DICTIONARY 952 (10th ed. 2014). It is hornbook law that "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." RESTATEMENT (SECOND) OF TORTS § 652D (1977). *See also*, 77 C.J.S. RIGHT OF PRIVACY AND PUBLICITY § 32; 62A AM. JUR. 2D PRIVACY § 79.

26.     Illinois courts have followed the Restatement (Second) of Torts: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 70 (Ill. App. 1st Dist. 2004) (quoting RESTATEMENT (SECOND) OF TORTS § 652B at 378 (1977).

27.     As described below, Defendants have violated Sections 1692c(b), 1692e, e(2)(A), e(10), and 1692f of FDCPA to gain a competitive advantage over other debt collectors that attempt to collect charged-off consumer credit card debts.

### III. Background Facts Related to Defendants' Collection Activities

28.     This action arises out of Defendants' attempts to collect from Plaintiff two (2) consumer credit card based debts (at times the "Subject Debts").

29.     The Subject Debts were incurred for personal, family and household expenses.

30.     Plaintiff is a "consumer" as defined by § 1692a(3) of the FDCPA.

31.     Plaintiff intended to pay off the Subject Debts but his financial circumstances prevented him from paying off the Subject Debts when the debts were still owned by the original creditor.

32.     Defendants' collection letters claim that the Subject Debts were purchased by LVNV Funding LLC ("LVNV").

33.     Defendant CCL acted as debt collector in attempting to collect Subject Debts on behalf of LVNV.

34.     Subsequent to Defendant CCL's attempts to collect the Subject Debt, Defendant RCS acted as debt collector in attempting to collect Subject Debts on behalf of LVNV.

35.     Defendant CCL's collection letters cited to various aspects of the FDCPA which plausibly suggest that Defendant CCL regarded the Subject Debts to be a "debt" as this term is defined by Section 1692a(5) of the FDCPA.

36.     Defendant RCS's collection letters cited to various aspects of the FDCPA which plausibly suggest that Defendant RCS regarded the Subject Debts to be a "debt" as this term is defined by Section 1692a(5) of the FDCPA.

37.     Defendant CCL attempted to collect the Subject Debts by and through mailing letters to Plaintiff within the past 12 months.

38.     Defendant CCL used various form/template letters when it attempted to collect the Subject Debts from Plaintiff.

39.     Defendant RCS attempted to collect the Subject Debts by and through mailing letters to Plaintiff within the past 12 months.

40.     Defendant RCS used various form/template letters when it attempted to collect the Subject Debts from Plaintiff.

**A. Defendant CCL's Use of a Third-Party Letter Vendor**

41.     Defendant CCL used a third-party letter vendor to mail the collection letters to Plaintiff to collect the Subject Debts where both collection letters were dated September 21, 2020.

7

42.     Defendant CCL's operating system/software involves CCL sending a debtor/consumer's demographic information, as well as the existence and the amount of debts, to CCL's third-party letter vendor for the purpose of causing the letter vendor to merge this information into letter templates that CCL uses to collect consumer debts.

43.     Plaintiff did not consent to having LVNV or CCL share his personal information or his status as a debtor with RCS's letter vendor or any third-parties.

**B.  Defendant RCS's Use of a Third-Party Letter Vendor**

44.     After Defendant CCL attempted to collect the Subject Debts, it appears that LVNV transferred the collection efforts relative to both of the Subject Debts to Defendant RCS.

45.     In an effort to collect the Subject Debts, Defendant RCS caused two collection letters to be transmitted Plaintiff where both letters were dated March 22, 2021.

46.     On information and belief, Defendant RCS used a third-party letter vendor to mail the collection letters to Plaintiff to collect the Subject Debts.

47.     On information and belief Defendant RCS's operating system/software involves RCS sending a debtor/consumer's demographic information, as well as the existence and the amount of debts, to RCS's third-party letter vendor for the purpose of causing the letter vendor to merge this information into letter templates that RCS uses to collect consumer debts.

48.     Plaintiff did not consent to having LVNV or RCS share his personal information or his status as a debtor with RCS's letter vendor or any third-parties.

**C.  CCL's "Privacy Notice"**

49.     Both of Defendant CCL's September 21, 2020 collection letters contained a "**PRIVACY NOTICE**" on the back of each letter where the "PRIVACY NOTICE" informed

Plaintiff that a group of fifteen (15) companies – the so-called "Resurgent Companies" – were entitled to "collect" and share "personal information" about Plaintiff.

50.     A true and accurate image of the back page of the September 21, 2020 collection letters is depicted below:

**PRIVACY NOTICE**

This Privacy Notice is being provided on behalf of each of the following related companies (collectively, the "Resurgent Companies"). It describes the general policy of the Resurgent Companies regarding the personal information of customers and former customers.

| | | |
|---|---|---|
| Resurgent Capital Services L.P. | LVNV Funding, LLC | Ashley Funding Services LLC |
| Resurgent Acquisitions LLC | PYOD LLC | SFG REO, LLC |
| Resurgent Receivables LLC | Pinnacle Credit Services, LLC | CACV of Colorado, LLC |
| Resurgent Funding LLC | Sherman Originator LLC | Anson Street LLC |
| CACH, LLC | Sherman Originator III LLC | Sherman Acquisition LLC |

**Information We May Collect.** The Resurgent Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history; (3) information that we receive from consumer reporting agencies, such as your credit worthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** At the Resurgent Companies, we restrict access to collected information about you to individuals who need to know such collected information in order to perform certain services in connection with your account. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Sharing Collected Information with Affiliates** From time to time, the Resurgent Companies may share collected information about customers and former customers with each other in connection with administering and collecting account to the extent permitted under the Fair Debt Collection Practices Act or applicable state law.

**Sharing Collected Information with Third Parties** The Resurgent Companies do not share collected information about customers or former customers with third parties, except as permitted in connection with administering and collecting accounts under the Fair Debt Collections Practices Act and applicable state law.

51.     Prior to receiving the September 21, 2020 collections letters, Plaintiff had never heard of any of the so-called Resurgent Companies and Plaintiff never consented to having the Resurgent Companies "collect" and otherwise share his "personal information".

52.     The PRIVACY NOTICE contains a heading entitled "**Information We May Collect**" which states that "[t]he Resurgent Companies may collect the following personal information: (1) information we received from your account file at the time we

purchase or begin to service your account, such as your name, social security number, and asset ... and (4) information we may obtain from other third party information providers, such as public records and databases that contain publicly available data about you[.]"

53.     The section entitled "**<u>Information We May Collect</u>**" concludes by stating "[a]ll of the personal information that we collect is referred to in this notice as 'collected information'."

54.     The PRIVACY NOTICE contains a heading entitled "**<u>Confidentiality and Security of Collected Information</u>**" which states that the so-called Resurgent Companies "restrict access to collected information about you to individuals who need to know such collected information in order to perform certain services in connection with your account."

55.     The PRIVACY NOTICE contains a heading entitled "**<u>Confidentiality and Security of Collected Information</u>**" but this section of the PRIVACY NOTICE does not state that the so-called Resurgent Companies would be sharing Plaintiff's personal information and status as a debtor with a third-party letter vendor.

56.     The PRIVACY NOTICE contains a heading entitled "**<u>Sharing Collected Information with Affiliates</u>**" which states that "[f]rom time to time, the Resurgent Companies may share collected information about customers and former customers with each other in connection with administering and collecting accounts to the extent permitted under the Fair Debt Collection Practices Act or applicable state law."

57.     The PRIVACY NOTICE contains a heading entitled "**<u>Sharing Collected Information with Third Parties</u>**" which states that the so-called Resurgent Companies "do not share collected information about customers or former customers with third

parties, except as permitted in connection with administering and collecting accounts under the Fair Debt Collection Practices Act or applicable state law."

58.     The above sections do not explain what it means by the phrase "customers and former customers".

59.     Plaintiff was never a customer of any of the so-called Resurgent Companies.

60.     Eleventh Circuit Court of Appeals has recently held that sharing personal information of a debtor violates Section 1692c(b) of the FDCPA. See, *Hunstein v. Preferred Collection and Management Services,* Inc., __ F.3d__ 2021 U.S. App. LEXIS 11648, 2021 WL 1556069 (11th Cir. April 21, 2021).

61.     Plaintiff, as a result of receiving the subject collection letters and reading the "**PRIVACY NOTICE**", was reasonably worried and fearful that Defendant CCL had already or was poised to share his personal/demographic data and the existence and amount of the Subject Debts with the so-called "Resurgent Companies" and unknown third-parties.

62.     Because Plaintiff was fearful of having his personal/demographic data and the existence and amount of the Subject Debts shared with the so-called "Resurgent Companies" and unknown third-parties, Plaintiff undertook measures to start to pay down the Subject Debts.

### D. Additional Allegations Common to All Counts

63.     Concerned with a possible violation of his privacy rights relative to the representations made by the "**PRIVACY NOTICE**", Plaintiff instructed his wife to contact Defendant CCL via telephone to attempt to take advantage of one or more of the discounted payment options.

64. Thereafter, based upon the representations made by the "**PRIVACY NOTICE**" and to attempt to pay off the Subject Debts, Plaintiff retained the services of a debt relief law firm to help negotiate a resolution of the Subject Debts and made periodic payments to pay off the Subject Debts into an escrow fund which resulted in Plaintiff incurring and expending sums of money towards paying off the Subject Debts.

65. Plaintiff, as a result of receiving the subject collection letters and reading the "**PRIVACY NOTICE**" was reasonably worried and fearful that Defendant CCL had already or was poised to share his personal/demographic data and the existence and amount of the Subject Debts with the so-called "Resurgent Companies" and unknown third-parties.

66. Because Plaintiff was fearful of having his personal/demographic data and the existence and amount of the Subject Debts shared with the so-called "Resurgent Companies" and unknown third-parties, Plaintiff undertook measures to attempt to pay down the Subject Debts.

67. Additionally, as a result of receiving the above unlawful communications from Defendant CCL and the improper sharing of Plaintiff's demographic data and the existence and amount of the Subject Debts with the so-called "Resurgent Companies" and unknown third-parties, Plaintiff retained the undersigned counsel to bring legal action against Defendant CCL on his behalf and to rectify the improper sharing of Plaintiff's personal information and status as an alleged debtor.

68. Retaining legal counsel to investigate his rights as set forth by the FDCPA caused Plaintiff to segregate his already limited funds.

69. Despite contacting Defendant CCL to inform them of his intention of paying off the Subject Debt by and through a third-party debt negotiator, CCL took

action in conjunction with LVNV which resulted in the Subject Debts being transferred to Defendant RCS for further collection attempts.

70.     In causing the collection of the Subject Debts to be transferred from CCL to Defendant RCS despite Plaintiff's promise that he intended to pay down the Subject Debts, Defendant CCL took action which violated Section 1692f of the FDCPA.

**COUNT ONE**

**Violations of § 1692c(b) of the FDCPA Against Defendant CCL Resulting From its Sharing of Plaintiff's Personal Information and his Status as a Debtor**

71.     Plaintiff JUNAID PATNI, repeats and re-alleges Paragraphs 1-70 as though fully set forth herein.

72.     Section 1692c(b) with certain inapplicable exceptions, prohibits debt collectors from communicating consumers' personal information to third parties "in connection with the collection of any debt."

73.     As discussed above and below, Defendant CCL violated Section 1692c(b) when they disclosed Plaintiff's personal contact information and information identifying the Subject Debts to Defendants' Letter Vendor.

74.     Defendant CCL's transmittal of Plaintiff's personal information, Plaintiff's purported status as a debtor relative to accounts allegedly owned by LVNV, and the amount of the Subject Debts to CCL's letter vendor constitutes a "communication" within the meaning of Section 1692a(2) which defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

75.     Defendant CCL's use of a third-party letter vendor to merge Plaintiff's demographic data and status as a debtor into CCL's form collection letters for the purpose of printing and mailing the September 21, 2020 collection letters to Plaintiff violated Section 1692c(b) of the FDCPA.

13

76. Defendant CCL's use of a third-party letter vendor to prepare and mail the September 21, 2020 collection letters to Plaintiff violated Section 1692c(b) of the FDCPA because Plaintiff's demographic information, personal identifying information and his status as a person who purportedly owed a debt to LVNV was provided to CCL's third-party letter vendor without Plaintiff's consent.

77. Defendant CCL's disclosure of Plaintiff's personal information and his status as a purported debtor posed a material risk of harm to the privacy interests protected by the FDCPA.

78. Defendant CCL's disclosures of Plaintiff's personal information and status as a purported debtor to its third-party letter vendor violated Plaintiff's rights privacy that was recognized by Congress when it enacted the FDCPA.

79. Defendant CCL's transmittal of Plaintiff's personal information and information identifying the Subject Debts to its Letter Vendor was not done in an attempt to comply with Section 1692b.

80. Defendant CCL's disclosure to its Letter Vendor of Plaintiff's personal information and his purported status a person owing the Subject Debts violated Section 1692c(b)'s prohibition on disclosure of debtor information to third-parties

81. Section 1692c(b) bears a close relationship to a privacy invasion that American courts have long recognized as cognizable.

82. Congress's judgment indicates that violations of Section 1692c(b) constitute a concrete injury.

83. As set forth above, Defendant CCL's disclosures to its third-party letter vendor (of Plaintiff's personal information and status as a purported debtor) caused Plaintiff to suffer from embarrassment, aggravation and emotional distress.

14

84. Defendant CCL's conduct posed a material risk of harm to Plaintiff's interest in receiving truthful and accurate information regarding its collection efforts and the truthful nature of the Subject Debts.

85. Accordingly, Plaintiff has standing to sue CCL for its improper and unlawful disclosure of Plaintiff's personal information and status as a debtor to third-party letter vendors.

86. The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) and FRCP 23(b)(3).

87. The proposed class encompasses all consumers with Illinois addresses who were sent similar form collection letters in the past year by Defendant CCL to collect consumer debts allegedly owed to LVNV until such time as Defendant stops using the same form collection letters.

WHEREFORE, Plaintiff JUNAID PATNI respectfully requests that this Honorable Court enter judgment in his favor and against Defendant CCL as follows:

      a. Declaring that the practices complained of herein are unlawful;

      b. Awarding Plaintiff and class members statutory damages of $1,000.00 as provided under 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(2)(B);

      c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

      d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3); and

      e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT TWO

**Violations of § 1692c(b) of the FDCPA Against Defendant RCS Resulting From its Sharing of Plaintiff's Personal Information and his Purported Status as a Debtor**

88. Plaintiff JUNAID PATNI, repeats and re-alleges Paragraphs 1-70 as though fully set forth herein.

89.     Section 1692c(b), with certain inapplicable exceptions, prohibits debt collectors from communicating consumers' personal information to third parties "in connection with the collection of any debt."

90.     As discussed above and below, on information and belief, Defendant RCS violated Section 1692c(b) when they disclosed Plaintiff's personal contact information and information identifying the Subject Debts to its Letter Vendor.

91.     Defendant RCS's likely transmittal of Plaintiff's personal information, Plaintiff's purported status as a debtor relative to accounts allegedly owned by LVNV, and the amount of the Subject Debts to RCS's letter vendor constitutes a "communication" within the meaning of Section 1692a(2) which defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

92.     To the extent Defendant RCS used a third-party letter vendor to merge Plaintiff's demographic data and status as a debtor into RCS's form collection letters for the purpose of printing and mailing the March 22, 2021 collection letters to Plaintiff, RCS violated Section 1692c(b) of the FDCPA.

93.     To the extent Defendant RCS used a third-party letter vendor to prepare and mail the March 22, 2021 collection letters to Plaintiff, RCS violated Section 1692c(b) of the FDCPA because Plaintiff's demographic information, personal identifying information and his status as a person who purportedly owed a debt to LVNV was provided to RCS's third-party letter vendor without Plaintiff's consent.

94.     Defendant RCS's transmittal of Plaintiff's personal contact information and information identifying the Subject Debts to its Letter Vendor was not done in an attempt to comply with Section 1692b.

95. Defendant RCS's disclosure to its Letter Vendor of Plaintiff's personal information and his purported status a person owing the Subject Debts violated Section 1692c(b)'s prohibition on disclosure of debtor information to third-parties.

96. Section 1692c(b) bears a close relationship to a privacy invasion that American courts have long recognized as cognizable.

97. Congress's judgment indicates that violations of Section 1692c(b) constitute a concrete injury.

98. Accordingly, Plaintiff has standing to sue RCS for its improper and unlawful disclosure of Plaintiff's personal information and status as a debtor to third-party letter vendors.

99. The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) and FRCP 23(b)(3).

100. The proposed class encompasses all consumers with Illinois addresses where were sent similar form collection letters in the past year by Defendant RCS to collect consumer debts allegedly owed to LVNV until such time as Defendant stops using the same form collection letters.

WHEREFORE, Plaintiff JUNAID PATNI respectfully requests that this Honorable Court enter judgment in his favor and against Defendant RCS as follows:

    a. Declaring that the practices complained of herein are unlawful;

    b. Awarding Plaintiff and class members statutory damages of $1,000.00 as provided under 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(2)(B);

    c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

    d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3); and

    e. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT THREE**

**Violations of §§ 1692e, 1692e (2), 1692e (10) and 1692f Against Both Defendants For Sharing Plaintiff's Personal Information and his Status as a Debtor**

101.    Plaintiff JUNAID PATNI, repeats and re-alleges Paragraphs 1-70 as though fully set forth herein.

102.    Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

103.    The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

104.    Section 1692e(2), prohibits a debt collector from engaging in any "false representation of – (A) the character, amount or legal status of any debt[.]"

105.    Section 1692e(10) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

106.    To the extent Defendant RCS used a third-party letter vendor to prepare and mail the March 22, 2021 collection letters to Plaintiff, RCS violated Sections 1692e, 1692e(2)(A) and 1692e(10) of the FDCPA because Plaintiff's demographic information, personal identifying information and his status as a person who purportedly owed a debt to LVNV was provided to RCS's third-party letter vendor without Plaintiff's consent.

107.    Section 1692f of the FDCPA states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

108.    Defendant CCL violated Section 1692f when they utilized a third-party letter vendor to print and/or mail the debt collection letters that were mailed to Plaintiff in an attempt to collection the Subject Debts.

109. Defendant CCL violated Section 1692f when they disclosed Plaintiff's personal contact information and information identifying the Subject Debts to Defendants' Letter Vendor.

110. Defendant CCL's provision of Plaintiff's personal contact information and his status as a debtor to CCL's letter vendor was not done in an attempt to comply with Section 1692b.

111. To the extent Defendant RCS used a third-party letter vendor to prepare and mail the March 22, 2021 collection letters to Plaintiff, RCS violated Sections 1692e, 1692e(2)(A) and 1692e(10) of the FDCPA because Plaintiff's demographic information, personal identifying information and his status as a person who purportedly owed a debt to LVNV was provided to RCS's third-party letter vendor without Plaintiff's consent.

112. To the extent Defendant RCS used a third-party letter vendor to prepare and mail the March 22, 2021 collection letters to Plaintiff, RCS violated Section 1692f when they disclosed Plaintiff's personal contact information and information identifying the Subject Debts to Defendants' Letter Vendor.

113. To the extent Defendant RCS used a third-party letter vendor to prepare and mail the March 22, 2021 collection letters to Plaintiff, RCS violated Section 1692f when they disclosed Plaintiff's personal contact information and information identifying the Subject Debts to Defendants' Letter Vendor.

114. To the extent Defendant RCS provided Plaintiff's personal contact information and information identifying the Subject Debts to its Letter Vendor, RCS's disclosures were not done in an attempt to comply with Section 1692b.

115. Sections 1692e, 1692e(2)(A), 1692e(10) and 1692f bear a close relationship to the societal harms that American courts have long recognized as cognizable.

116. Further, Congress's judgment indicates that violations of Sections 1692e, 1692e(2)(A), 1692e(10) and 1692f of the FDCPA constitute concrete injuries.

117. Accordingly, Plaintiff has standing to sue Defendants for their disclosure of Plaintiff's personal information and status as a debtor to third-party letter vendors.

118. The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) and FRCP 23(b)(3).

119. The proposed class encompasses all consumers with Illinois addresses where were sent similar form collection letters in the past year by the Defendants to collect consumer debts allegedly owed to LVNV until such time as Defendant stops using the same form collection letters.

WHEREFORE, Plaintiff JUNAID PATNI respectfully requests that this Honorable Court enter judgment in his favor and against Defendants CCL and RCS as follows:

    a. Declaring that the practices complained of herein are unlawful;

    b. Awarding Plaintiff and class members statutory damages of $1,000.00 as provided under 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(2)(B);

    c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

    d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3); and

    e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT FOUR

### Violations of §§ 1692e, 1692e(2), 1692e(10) and 1692f Resulting From Defendant CCL's "Privacy Notice"

120. Plaintiff JUNAID PATNI, repeats and re-alleges Paragraphs 1-70 as though fully set forth herein.

121.    Contrary to what is stated in the headings entitled "**Sharing Collected Information with Affiliates**" and "**Sharing Collected Information with Third Parties**", no provision of the FDCPA authorized Defendant or any of the so-called Resurgent Companies to "share collected information about customers and former customers with each other in connection with administering and collecting accounts."

122.    Contrary to what is stated in the heading entitled "**Sharing Collected Information with Affiliates**" and "**Sharing Collected Information with Third Parties**", no Illinois state law (statutory or common law based) authorized Defendant CCL or any of the so-called Resurgent Companies to "share collected information about customers and former customers with each other in connection with administering and collecting accounts."

123.    Defendant CCL's conduct also posed a material risk of harm to the privacy interests protected by the FDCPA.

124.    Defendant CCL's improper disclosures of Plaintiff's personal information and status as a purported debtor to its third-party letter vendor violated Plaintiff's rights privacy that was recognized by Congress when it enacted the FDCPA.

125.    Defendant CCL's improper disclosures to its third-party letter vendor (of Plaintiff's personal information and status as a purported debtor) caused Plaintiff to suffer from embarrassment, aggravation and emotional distress.

126.    Defendant CCL's conduct posed a material risk of harm to Plaintiff's interest in receiving truthful and accurate information regarding its collection efforts and the truthful nature of the Subject Debts.

127.    Defendant CCL's use of the "**PRIVACY NOTICE**" violated Section 1692e because as set forth above, the "**PRIVACY NOTICE**" constituted a false, deceptive, or misleading representation or means in connection with the collection of the Subject

Debts where the "**PRIVACY NOTICE**" misstated CCL's purported right to share Plaintiff's personal information and his status as a debtor with third-parties.

128. Defendant CCL's use of the "**PRIVACY NOTICE**" violated Section 1692e(2)(A) because as set forth above, the "**PRIVACY NOTICE**" constituted a "false representation of ... [the] legal status of" Plaintiff's privacy rights related to the Subject Debts where the "**PRIVACY NOTICE**" misstated CCL's purported right to share Plaintiff's personal information and his status as a debtor with third-parties.

129. Defendant CCL's use of the "**PRIVACY NOTICE**" violated Section 1692e(10) because as set forth above, the "**PRIVACY NOTICE**" constituted a "false, deceptive, or misleading representation or means in connection with the collection of" the Subject Debts where the "**PRIVACY NOTICE**" misstated CCL's purported right to share Plaintiff's personal information and his status as a debtor with third-parties.

130. Contrary to CCL's "**PRIVACY NOTICE**", it did not have the right to share Plaintiff's personal information and his status as a debtor with third-parties.

131. CCL's "**PRIVACY NOTICE**" violated Sections 1692e, 1692e(2)(A) and 1692e(10) because the representations in the "**PRIVACY NOTICE**" runs contrary to the purpose and terms of the FDCPA.

132. CCL's "**PRIVACY NOTICE**" violated Sections 1692e, 1692e(2)(A) and 1692e(10) because the representations in the "**PRIVACY NOTICE**" are not supported by any applicable provision of the FDCPA.

133. Section 1692f of the FDCPA states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

134. CCL's "**PRIVACY NOTICE**" constitutes and unfair or unconscionable means to collect or attempt to collect a debt because CCL's representations in the "**PRIVACY NOTICE**" runs contrary to the purpose and terms of the FDCPA.

135. CCL's "**PRIVACY NOTICE**" constitutes and unfair or unconscionable means to collect or attempt to collect a debt because CCL's representations in the "**PRIVACY NOTICE**" are not supported by any applicable provision of the FDCPA.

136. Sections 1692e, 1692e(2)(A), 1692e(10) and 1692f bear a close relationship to the societal harms that American courts have long recognized as cognizable, including, the right to privacy in relation to financial obligations. Further, Congress's judgment indicates that violations of these Sections constitute concrete injuries.

137. Accordingly, Plaintiff has standing to sue Defendants for their improper and unlawful disclosure of Plaintiff's personal information and status as a debtor to third-party letter vendors.

138. The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) and FRCP 23(b)(3).

139. The proposed class encompasses all consumers with Illinois addresses where were sent similar form collection letters in the past year by Defendant CCL to collect consumer debts allegedly owed to LVNV where the letters contained a form "PRIVACY NOTICE" until such time as Defendant stops utilizing the "PRIVACY NOTICE".

WHEREFORE, Plaintiff JUNAID PATNI respectfully requests that this Honorable Court enter judgment in his favor and against Defendant CCL as follows:

    a. Declaring that the practices complained of herein are unlawful;

    b. Awarding Plaintiff and class members statutory damages of $1,000.00 as provided under 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(2)(B);

    c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

    d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3); and

    e. Awarding any other relief as this Honorable Court deems just and appropriate.

**COUNT FIVE**

**Violations of §§ 1692e, 1692e (2), 1692e (10) and 1692f Resulting From Defendant CCL's Time-Sensitive Discounted Payment Options**

140.   Plaintiff JUNAID PATNI, repeats and re-alleges Paragraphs 1-70 as though fully set forth herein.

141.   Both of Defendant's CCL's September 21, 2020 form collection letters promoted three types of discounted "Savings Options".

142.   Both of Defendant CCL's September 21, 2020 form collection letters warned Plaintiff that the three (3) payment options were subject to a forty-five (45) day payment deadline where each letter said: "[t]his offer will remain open until at least 45 days after you receive this notice."

143.   Both of Defendant CCL's September 21, 2020 form collection letters contained the phrase "[w]e are not obligated to renew this offer" below the offers and just following the forty-five (45) day payment deadline.

144.   Both of Defendant CCL's September 21, 2020 form collection letters informed Plaintiff that he had thirty (30) days after the receipt of each letter to "dispute the validity of the debt" otherwise "the debt will be assumed to be valid by this office."

145.   Both of Defendant CCL's September 21, 2020 form collection letters also informed Plaintiff that if he disputed the debts within thirty (30) days after the receipt of each letter "this office will obtain verification of the debt[.]"

146.   The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

147.   Section 1692e(2), prohibits a debt collector from engaging in any "false representation of – (A) the character, amount or legal status of any debt[.]"

24

148.    Section §1692e(10) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

149.    For the reasons set forth above, Defendant CCL's use of the phrase "[w]e are not obligated to renew this offer" in conjunction with the time-sensitive discounted payment options violated Sections 1692e, 1692e(2)(A) and 1692e(10) because unbeknownst to Plaintiff, Defendant CCL was authorized by LVNV to renew the discounted payment options but the subject language was used to deceive Plaintiff and cause him to pay down the Subject Debts.

150.    Section 1692f of the FDCPA states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

151.    For the reasons set forth above, Defendant CCL's use of the phrase "[w]e are not obligated to renew this offer" in conjunction with the time-sensitive discounted payment options violated Section 1692f because unbeknownst to Plaintiff, Defendant CCL was authorized by LVNV to renew the discounted payment options but the subject language was used to deceive Plaintiff and cause him to pay down the Subject Debts.

152.    Sections 1692e, 1692e(2)(A), 1692e(10) and 1692f bear a close relationship to the societal harms that American courts have long recognized as cognizable, including the right to privacy in relation to financial obligations.

153.    Further, Congress's judgment indicates that violations of these Sections constitute concrete injuries.

154.    Accordingly, Plaintiff has standing to sue Defendants for their improper and unlawful disclosure of Plaintiff's personal information and status as a debtor to third-party letter vendors.

155.    The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) and FRCP 23(b)(3).

156.    The proposed class encompasses all consumers with Illinois addresses where were sent similar form collection letters in the past year by Defendant CCL to collect consumer debts allegedly owed to LVNV where the letters contained a form letter that provided time-sensitive payment options until such time as Defendant stops utilizing the "PRIVACY NOTICE".

WHEREFORE, Plaintiff JUNAID PATNI respectfully requests that this Honorable Court enter judgment in his favor and against Defendant CCL as follows:

  a.   Declaring that the practices complained of herein are unlawful;

  b.   Awarding Plaintiff and class members statutory damages of $1,000.00 as provided under 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(2)(B);

  c.   Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

  d.   Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3); and

  e.   Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT SIX

**Against Defendants for Violating Section 1692f of the FDCPA**

157.    Plaintiff JUNAID PATNI, repeats and re-alleges Paragraphs 1-70 as though fully set forth herein.

158.    Section 1692f of the FDCPA states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

159.    As set forth above, despite Plaintiff's wife contacting Defendant CCL to explain that Plaintiff was preparing to pay down the Subject Debts, Defendant CCL caused the Subject Debts to be transferred to Defendant RCS to frustrate Plaintiff and

for the purpose of attempting to cause Plaintiff to pay off the debt sooner than the time-line proposed by Plaintiff's wife.

160. By accepting the transfer of the Subject Debts with knowledge of these circumstances, Defendant RCS also violated Section 1692f of the FDCPA.

161. As set forth above, Plaintiff has suffered actual injuries as a result of Defendants' conduct.

WHEREFORE, Plaintiff JUNAID PATNI respectfully requests that this Honorable Court enter judgment in his favor and against Defendants CCL and RCS as follows:

     a. Declaring that the practices complained of herein are unlawful;

     b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §§ 1692k(a)(2)(A);

     c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

     d. Awarding Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k(a)(3); and

     e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT SEVEN

### Violations ICFA Against Defendants CCL and RCS

162. Plaintiff JUNAID PATNI, repeats and re-alleges Paragraphs 1-70 as though fully set forth herein.

163. ICFA applies to prohibit certain misconduct involving "any trade or commerce" taking place inside the State of Illinois.

164. ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact,

with intent that others rely upon the concealment, suppression or omission of such material fact[.]" 815 ILCS 505/2.

165.    Defendants CCL and RCS's debt collection activities with regard to Plaintiff involve the conduct of trade and/or commerce as defined by ICFA.

166.    Defendants CCL and RCS's debt collection activities with regard to Plaintiff violated Section 505/2 because neither Defendant was authorized to disclose Plaintiff's personal information and his status as an alleged debtor with any third parties, including Defendants' letter vendors.

167.    Defendant CCL's debt collection activities involving Plaintiff also violated Section 505/2 because CCL's above described representations depicted in its "**PRIVACY NOTICE**" constitute deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact.

168.    In particular, Defendant CCL's "**PRIVACY NOTICE**" constitutes deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact because CCL did not have the right to share Plaintiff's personal information and his status as an alleged debtor with any third parties, including CCL's letter vendor.

169.    Plaintiff did not authorize Defendant CCL or any so-called "Resurgent Companies" to disclose his personal information and his status as an alleged debtor with any third parties, including CCL's letter vendor.

170.    Plaintiff did not authorize Defendant RCS or any so-called "Resurgent Companies" to disclose his personal information and his status as an alleged debtor with any third parties, including CCL's letter vendor.

171.    Defendant RCS's above described misrepresentations involve a pattern and practice of behavior in which RCS routinely engages as part of its collection activities within the State of Illinois.

172.    Defendant CCL's above described misrepresentations involve a pattern and practice of behavior in which CCL routinely engages as part of its collection activities within the State of Illinois.

173.    ICFA defines the term "person" to include "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." 815 ILCS 505/1(c).

174.    Defendant RCS is a "person" as defined by 815 ILCS § 505/1(c).

175.    Defendant CCL is a "person" as defined by 815 ILCS § 505/1(c).

176.    Plaintiff is a "person" and "consumer" as defined by 815 ILCS §§ 505/1(c) and 505/1(e).

177.    As described above, Plaintiff incurred damage as a result of Defendants' violation of the ICFA and is entitled to seek relief against Defendants. See, 815 ILCS 50510a(a).  In particular, Plaintiff has suffered damages in the form of time spent retaining and consulting with his counsel and as a result of purchasing an application to ascertain whether Defendants unlawfully shared his personal information and his purported status as a debtor with third-parties in violation of the express terms of the FDCPA.

178.    Defendant RCS's conduct demonstrates a reckless disregard for the rights of Plaintiff and similarly situated Illinois consumers.

179.    Defendant CCL's conduct demonstrates a reckless disregard for the rights of Plaintiff and similarly situated Illinois consumers.

180.    The claims asserted in this Count satisfy the elements of FRCP 23(a)(1)-(4) and FRCP 23(b)(3).

181.    The proposed class encompasses all consumers with Illinois addresses where were sent similar form collection letters in the past year by Defendants to collect consumer debts allegedly owed to LVNV where the form collection letters resulted in Defendants disclosing the personal information and debts of consumers to third party mail vendors.

WHEREFORE, Plaintiff JUNAID PATNI respectfully requests that this Honorable Court enter judgment in his favor and against Defendant CCL as follows:

a.   Declaring that the practices complained of herein are unlawful;

b.   Awarding Plaintiff and class members damages as provided by ICFA;

c.   damages as provided by 15 U.S.C. §1692k(a)(1));

d.   Awarding Plaintiff costs and reasonable attorney's fees as provided by ICFA; and

e.   Awarding any other relief as this Honorable Court deems just and appropriate.

***Plaintiff, by and through his counsel, requests a jury trial as to all applicable Counts***

Respectfully submitted,

*/s/ James C. Vlahakis*
James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Suite 200
Lombard, IL 60148
Phone: (630) 575-8181
jvlahakis@sulaimanlaw.com

**Attorney for Plaintiff JUNAID PATNI**